UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:11-cv-00023-RJC

| U.S. COMMODITY FUTURES TRADING COMMISSION, | ) ) ) | |
|---|---|---|
| Plaintiff, | ) ) | |
| v. | ) ) | |
| KEITH F. SIMMONS, et al. | ) ) | **ORDER** |
| Defendants, and | ) ) | |
| LAWRENCE SALAZAR, et al. | ) ) | |
| Relief Defendants. | ) ) | |

**THIS MATTER** comes before the Court on the motion of Plaintiff U.S. Commodity Futures Trading Commission ("CFTC") for summary judgment, (Doc. No. 156), against Relief Defendant Shiloh Estate, LLC ("Shiloh"), and related pleadings.[1] The issues have been fully briefed and are ripe for adjudication.

I.  BACKGROUND

This civil case arises out of a Ponzi scheme operating in this district and elsewhere approximately between 2007 and 2011. (Doc. No. 1: Complaint at 2, 6). Investigation of the scheme led to the criminal convictions of Keith Simmons, Bryan Coats, Jonathan Davey and others for various offenses including securities fraud, wire fraud, money laundering, and tax evasion. (See Case Nos. 3:10-cr-23 (Simmons), 3:11-cr-309 (Coats), 3:12-cr-68 (Davey)).

---

[1] Shiloh requests summary judgment against the CFTC in the conclusion of its Response. (Doc. No. 164 at 7). However, Local Civil Rule 7.1(C)(2) prohibits a party from including a motion in a response brief; therefore, the request will not be considered.

1

For purposes of this motion, it is undisputed that Shiloh received $1,305,642.33 in ill-gotten gains from Davey. (Doc. No. 164: Shiloh Resp. at 2). Specifically, Simmons, Davey, and others fraudulently solicited approximately $35 million from at least 240 investors for purported trading in off-exchange foreign currency. (Doc. No. 156-1: CFTC Mem. at 4).[2] Davey diverted investor funds into a number of accounts and transferred a portion of those funds to Shiloh as "loans" from an entity he controlled called Sovereign Grace. (Id. at 8-10).

Shiloh's sole purpose was to own a luxury home for Davey's residence. (Id. at 4, 6). After purchasing land, Shiloh contracted with Claggett & Sons, Inc. ("Claggett")[3] to build the house. Claggett continued to perform construction work after Shiloh defaulted by failing to pay a $93,000 invoice in May 2009.[4] (Id. at 11). Claggett purchased Shiloh from Davey in January 2010 for $1 and released the purported debt for the unpaid and post-default construction invoices totaling over $1.8 million.[5] (Id.). According to the Sale of LLC Interest Agreement between Davey and Claggett, "Claggett and Sons purchased the stocks of Shiloh and became its sole member …" (Id.).

There are no disputes about these material facts, but the parties contest whether Shiloh has a legitimate claim to the $1,305,642.33 "loaned" to it by Davey's Sovereign Grace. As detailed below, CFTC is entitled to summary judgment as a matter of law because Shiloh did

---

[2] The CFTC's Memorandum contains a cover page, table of contents, and table of authorities which causes its page numbers to differ from those designated by the CM/ECF system. To avoid confusion, the Court will refer to page numbers in the CM/ECF footer.
[3] Claggett asserts itself as intervenor in this matter, (Doc. No. 164: Shiloh Response at 1); however, Claggett withdrew, (Doc. No. 66), its Motion to Intervene, (Doc. No. 46), in 2011. Therefore, it is not before the Court as a separate party.
[4] Shiloh paid $504,470.92 for the land, $65,197.50 to the architect, and $716,280 to Claggett prior to Shiloh's default. (Doc. No. 156-2: CFTC Statement of Undisputed Material Facts at 3, 5-9).
[5] Immediately prior to the sale, Shiloh defaulted on the "loans" from Sovereign Grace. (Doc. No. 156-2: CFTC Statement of Undisputed Material Facts at 13).

2

nothing to merit the receipt of funds fraudulently obtained from Davey's victims.

II.     STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id. The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). This "burden on the moving party may be discharged by 'showing'— that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once this initial burden is met, the burden shifts to the nonmoving party, which "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250. The nonmoving party may not rely upon mere allegations or denials of allegations in the pleadings to defeat a motion for summary judgment, rather it must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Id. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for

the nonmoving party, there is no genuine issue for trial." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. Anderson, 477 U.S. at 248–49. "If the evidence is merely colorable or is not significantly probative," summary judgment is appropriate. Id. at 249–50 (citations omitted).

III. DISCUSSION

    A.    Disgorgement by Shiloh

The Commodity Exchange Act (CEA), 7 U.S.C. § 13a-1(d)(3)(B), enables a court to impose the equitable remedy of disgorgement of gains received in connection with a person found in violation of the Act. Appellate courts have recognized the broad equitable power of federal courts to recover ill-gotten gains for the benefit of victims held by the original wrong doer or a subsequent holder of the proceeds. CFTC v. Kimberlynn Creek Ranch, Inc., 276 F.3d 187, 192 n.4 (4th Cir. 2002) (citing SEC v. Colello, 139 F.3d 674, 676 (9th Cir. 1998); SEC v. Cavanagh, 155 F.3d 129, 136 (2d Cir. 1998). The exercise of such power prevents a violator from circumventing the government's authority to recapture fraud proceeds by simply passing them on to others, even without their knowledge. Cavanagh, 155 F.3d at 137. Thus, a "nominal" or "relief" defendant is not accused of wrongdoing, but may be joined as a means of facilitating the collection of property which is the subject of the litigation. Kimberlynn Creek Ranch, 276 F.3d at 191.

A court may order equitable relief, including disgorgement, against a nominal or relief defendant where it: "(1) has received ill-gotten gains; and (2) does not have a legitimate claim to those funds." Id. at 192 (quoting Cavanagh, 155 F.3d at 137) (internal quotation marks omitted). As noted above, there is no dispute that Shiloh received over $1.3 million from Davey's fraud in

violation of the Act. The government argues that Shiloh provided no services to earn the money; it was simply a vehicle to hold title to the property developed as Davey's residence. (Doc. No. 156-1: CFTC Mem. at 10). Shiloh counters that its sole member, Claggett, has priority over the CFTC in the property because it innocently gained interest in Shiloh in exchange for valuable consideration, that is, the unpaid expenses to construct the home and maintain it during this litigation. (Doc. No. 164: Shiloh Resp. at 2).

The Fourth Circuit has recognized that receipt of funds for services rendered constitutes one type of ownership interest that would preclude the CFTC from proceeding against the holder of funds as a nominal defendant. Kimberlynn Creek Ranch, 276 F.3d at 192. The flaw in Shiloh's application of this example to itself is its conflation of Claggett & Sons, Inc. with Shiloh Estate, LLC and the real estate with the criminal proceeds. As the builder of the house, Claggett innocently received victims' funds funneled by Davey through Shiloh prior to defaulting on the construction contract. The CFTC is not seeking disgorgement of those funds from Claggett & Sons, Inc. As a creditor, Claggett obtained the stock of Shiloh Estate, LLC, which owns the house, in exchange for purported debt from construction work. The CFTC is not seeking forfeiture of the house. Rather, the CFTC is properly seeking disgorgement of victims' funds from Shiloh. When Claggett became Shiloh's sole member, it gained "one hundred percent (100%) interest in the capital and profits of Shiloh Estate, LLC," according to the Sale of LLC Interest Agreement. (Doc. No. 156-1: CFTC Mem. at 8). It also gained responsibility for the liabilities of Shiloh, according to the law of Delaware where the entity was formed. R. Franklin Balotti and Jesse A. Finkelstein, The Delaware Law of Corporations and Business Organizations, § 9.28 (Aspen Law & Business 1998). Therefore, the Court finds as a matter of law that Shiloh does not have a legitimate claim to $1,305,642.33 in victim funds it received

5

through Davey.

B.  Judicial Estoppel

Shiloh argues that the government should be estopped from asserting its priority based on statements made by the United States Attorney's Office for the Western District of North Carolina ("USAO") and the CFTC in this litigation regarding their interests being subordinate to Claggett's cost of construction. (Doc. No. 164: Shiloh Resp. at 5). The CFTC responds that the government has consistently insisted that Shiloh is liable for the approximately $1.3 million of ill-gotten gains from Davey and that the government's statements offered by Shiloh were made in the course of settlement negotiations, which render them inadmissible under Federal Rule of Evidence 408. (Doc. No. 167: CFTC Reply at 5-7).

Shiloh relies on Guinness v. Ward, 955 F.2d 875, 899 (4th Cir. 1992), where the Fourth Circuit noted "[t]hat an estoppel can arise because of a prior inconsistent claim or position taken in a judicial proceeding is clear." Here, the statements of the USAO and the CFTC were not taken in judicial proceedings, but rather in settlement negotiations. The letter from the USAO "proposes" the distribution of proceeds from the potential sale of the real estate allowing recovery of costs by Claggett and recoupment of victims' funds as a "resolution." (Doc. No. 164-2: Ex. 1 to Dec. of Jacob H. Sussman). Similarly, the CFTC email notes the willingness to "discuss … a resolution of this matter," but states that $1.3 million should be returned to investors from Shiloh. (Doc. No. 164-3: Ex. 1 to Dec. of F. Lane Williamson). Thus, judicial estoppel does not apply because the statements were not made in the course of judicial proceedings and are consistent with the government's position in litigation before the Court.

C.  Interest

The CFTC requests that the Court award pre-judgment and post-judgment interest. (Doc.

No. 156-1: CFTC Mem. at 14). "[A]bsent a statutory mandate the award of pre-judgment interest is discretionary with the trial court." Quesinberry v. Life Ins. Co. of N.A., 987 F.2d 1017, 1030 (4th Cir. 1993). Here, the Complaint was filed in January 2011, (Doc. No. 1), but was stayed pending the completion of the criminal prosecution, (Doc. No. 69: Order). Because the lengthy delay in resolving this matter was beyond the control of Shiloh, the Court will exercise its discretion not to award pre-judgment interest. Post-judgment interest is not discretionary, Quesinberry, 987 F.2d at 1031; 28 U.S.C. § 1961(a).

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that CFTC's Motion for Summary Judgment, (Doc. No. 156), is **GRANTED**, and Shiloh is ordered to disgorge $1,305,642.33, plus post-judgment interest, to be distributed to the victims and the amounts designated in Davey's Judgment in Case No. 3:12-cr-68, (Doc. No. 263).

The Clerk of the Court is directed to close this case as to Relief Defendant Shiloh Estate, LLC.

Signed: March 29, 2017

Robert J. Conrad, Jr.
United States District Judge

7